IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES A. WIRTH,

                    Petitioner,

    vs.

M. KRAMER, Warden,

                    Respondent.

Case No. 2:06-cv-02836 (JKS)

MEMORANDUM DISPOSITION

        Petitioner, James A. Wirth, a state prisoner proceeding through counsel, has filed a Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Wirth is currently in Custody of the California

Department of Corrections, incarcerated at the Folsom State Prison in Folsom, California.

Respondent has filed his answer.  Wirth has replied.

I.        STATEMENT OF THE FACTS

        The following statement of facts is excerpted from the Court of Appeal for the State of

California's decision in this case:

                [James Wirth] and Jill Wirth were married in 1987 and lived on Snowbird
        Way.  [Wirth] and Jill had a physical fight, after which Jill took guns and
        ammunition away  from [Wirth]. In December 2001 Jill moved to Folsom and filed
        for divorce.  [Wirth] changed the locks on the house.

In January 2002 [Wirth] took an overdose of pills and was involuntarily hospitalized.[1]  [Wirth] called Jill and tried to leave the hospital. After the police pulled him out of Jill's car and were attempting to handcuff him, [Wirth] warned them there would be "a lot more unhappy families around."  [Wirth] continued to taunt the police, offering to take them all on.

On January 25, 2002, Jill discovered [Wirth] outside her apartment. Later that evening, in a series of telephone calls, [Wirth] told Jill she would find out something the next day, something was going to happen, and that he was taking the dogs.  She also heard what sounded like a gunshot.  Jill's car was found burning at 3:20 a.m.  Jill told the police dispatcher [Wirth] had been calling, saying he wanted to kill himself and would "torch" her residence.

About 5:00 a.m. on January 26, 2002, [Wirth] called his son's former girlfriend.  He told her he [had] been drinking and taking pills.  He said he moved Jill's car and burned it so she would be left with nothing.  [Wirth] said he had bolted the doors to his house and had five gallons of gasoline in the house.

Later that morning, [Wirth] told Jill he had doused things with gasoline and would take the dogs with him. He was waiting for someone to show up before lighting the match.

[Wirth's] friend Refugio Sanchez came to [Wirth's] home. [Wirth] told Sanchez he was going to burn down the house.  While Sanchez was there, [Wirth] told Sanchez he was going to burn down the house.  While Sanchez was there, [Wirth] told Jill in a telephone call that gasoline had been spilled.  When the police arrived, Sanchez saw [Wirth] talk to them; [Wirth] did not seem surprised to see them. [Wirth] had Sanchez listen to his wedding vows on tape.  [Wirth] then asked Sanchez to take the dogs.

[Wirth's]stepson called the police after discussing it with Jill.

Sacramento County Sheriff's Deputies Glen Petree and Robert Pomerson went to the  house and rang the doorbell and knocked on the door after seeing Sanchez and [Wirth] inside.  [Wirth] opened the miniblinds on the window next to the door and said, "What the fuck do you want[?]"  Petree asked [Wirth] to open the door.  When [Wirth] did not respond, Petree called for backup.  Meanwhile, the deputies heard a power tool.  Sanchez stepped outside and told the deputies [Wirth] had screwed shut all the doors.  [Wirth] had explained to Sanchez he would burn the house while he lay in the bedroom.  Sanchez said [Wirth] showed him how he had arranged things in the master bedroom.  There were gas cans in another bedroom, and knee-deep clothes in the hall where [Wirth] intended to start the fire.

Deputy Rick Kemp arrived with a police dog, and a police helicopter circled overhead.  Deputies Brendon Hom, Wayne Stephens, Kemp, Petree, and Pomerson prepared to force entry into the house, and two of them kicked open the door leading into the garage.  They then kicked open the door between the garage and family

[1]  The prosecution presented records showing [Wirth] was diagnosed with major depression and alcohol abuse.

room, calling [Wirth's] name and yelling that they were from the sheriff's department.  The deputies heard no sound other than their own voices and the barking dog.

The deputies saw gas cans in the family room and "debris" piled in the hallway.  As the deputies entered the hall, a ball of flame came out of the bedroom and into the hallway.  Deputies found [Wirth] sitting in the shower with the water running.  [Wirth] told Deputy Hom that if "you guys hadn't showed up, none of this would have happened. I was just gonna leave with my dogs."

[Wirth] told Sacramento Metropolitan Fire District Investigator Thomas McKinnon he had seen a police officer at the door, but he thought the dog barking was his dog.  He did not hear the deputies knocking on the doors.  [Wirth] lit the fire in his bedroom.  He intended to burn up all of his wife's belongings.  [Wirth] was "pretty sure" the deputies were coming in.  [Wirth] admitted torching the car.[2]

## II.    BACKGROUND/ PRIOR PROCEEDINGS

A jury convicted Wirth of five counts of attempted murder of a peace officer (Cal. Penal Code §§ 664, 187, 664(e), 12022(b)(1)) (counts 1-5); five counts of assaulting a peace officer with a deadly weapon and by force likely to produce great bodily injury (Cal. Penal Code § 245(c)) (counts 6-10); one count of arson of an inhabited structure with the use of an accelerant (Cal. Penal Code §§ 451(b), 451.1(a)(5)) (count 11); two counts of arson of property (Cal. Penal Code §§ 451(d)) (counts 12-13); and one count of stalking (Cal. Penal Code §§ 646.9) (count 14).  The jury found that the attempted murders were not willful, deliberate and premeditated.[3]  Wirth has never

---

[2]  Lodged Document No. 3, at pp. 2-5 (footnote in original).

[3]  Lodged Doc. No. 12, pp. 274-75.  The prosecution alleged that each instance of attempted murder was "willful, deliberate and premeditated."  Accordingly, the trial court issued California Jury Instruction– Criminal 8.67:

It is also alleged [in Count[s]] that the crime attempted was willful, deliberate, and premeditated murder.  If you find the defendant guilty of attempted murder, you must determine whether this allegation is true or not true.

"Willful" means intentional.

"Deliberate" relates to how a person thinks, and means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.

continued . . . .

contested that this jury finding was inconsistent with the specific intent finding.  The trial court

sentenced Wirth to two consecutive life terms.[4]

Wirth filed a timely appeal with the Court of Appeal for the State of California, Third

District.  Wirth argued that the trial court's failure to instruct the jury, *sua sponte*, that he must

> "Premeditated" relates to when a person thinks, and means considered beforehand. A person premeditates by deliberating before taking action.
>
> If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder.
>
> The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances.
>
> The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation.
>
> To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being.
>
> The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.
>
> You will include a special finding on that question in your verdict, using a form that will be supplied for that purpose.

The jury's finding that each count of attempted murder was not "willful, deliberate, and premeditated" is not inconsistent with their finding of specific intent for attempted murder because the jury could have found that the attempted murder was committed intentionally, but was not premeditated.  In essence, the jury found Wirth guilty of attempted Second Degree Murder, not attempted First Degree Murder.

[4] Lodged Doc. No. 12, Vol. 2 of 2, pp. 335-336.  Wirth was sentenced to consecutive life sentences on counts one and two, concurrent life sentences on counts three through five, and determinative, concurrent sentences on counts eleven through fourteen.  The court stayed sentencing on counts six through eleven.

actually have known all of the victims in a "particular zone of risk" permitted the jury to convict

him under a theory of "transferred intent" or "implied malice."  Wirth contended that four of his

five life sentences should be reversed on these grounds.[5]  The Court of Appeal affirmed the

judgement in a reasoned decision.[6]

Wirth filed a petition for review in the California Supreme Court, which was summarily

denied on November 17, 2004.[7]

On January 20, 2005, Wirth filed a petition for a writ of habeas corpus in Sacramento

County Superior Court.[8]  In his petition, Wirth claimed: 1) that the evidence presented at trial was

insufficient to show that he had attempted to murder the five officers who entered his home; and 2)

the trial court committed reversible error in instructing the jury concerning malice aforethought and

the specific intent to kill.  Specifically, Wirth alleged that the court's instructions relieved the

prosecution of its burden of proof on malice aforethought and the specific intent to kill.[9]  The

Superior Court noted that neither of Wirth's claims had been raised on direct appeal, and were

procedurally barred.[10]  Consequently, the Superior Court denied Wirth's petition.

---

[5] Lodged Doc. No. 3, p. 5.

[6] Lodged Doc. No. 3.

[7] Lodged Doc. No. 6.

[8] Lodged Doc. No. 7.

[9] *See* Lodged Doc. No. 7.

[10] Lodged Doc. No. 8.

Wirth then filed the same petition for a writ of habeas corpus in the California Court of Appeal, Third District.  The Court of Appeal summarily denied the petition on March 17, 2005.[11]

Wirth then filed a petition for a writ of habeas corpus in the California Supreme Court.[12] The petition raised the same substantive issues as the ones filed in the Superior Court and the Court of Appeal.  The California Supreme Court denied the petition on July 19, 2006.[13]

On December 14, 2006, Wirth timely filed a petition for a writ of habeas corpus in this Court. On June 8, 2007, Wirth, through counsel, filed the First Amended Petition.  Respondent has replied and affirmatively alleged that Wirth's sufficiency of the evidence claim is procedurally barred.  Respondent has raised no other affirmative defenses.[14]  Wirth has responded.

### III.   STANDARD OF REVIEW

Because Wirth filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[15]  The Supreme Court has explained that "clearly

---

[11]  Lodged Doc. No. 9.

[12]  Lodged Doc. No. 10.

[13]  Lodged Doc. No. 11.

[14]  *See* Rules– 2254 Cases, Rule 5(b).

[15]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[16]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[17]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[18]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[19]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[20]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[21]

---

[16] *Williams*, 529 U.S. at 412.

[17] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[18] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[19] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[20] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[21] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

In applying this standard, this Court reviews the last reasoned decision by the state court,[22] which in this case was that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[23]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[24]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[25]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[26]

## IIII.    DISCUSSION

---

[22] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[23] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[24] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[25] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[26] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

For purposes of clarity and continuity this Court will first address Wirth's claim that there was insufficient evidence to support his convictions of attempted murder on five officers. This Court will then address Wirth's arguments regarding the charged jury instructions.

GROUND I:

In his first ground for relief, Wirth claims that there was insufficient evidence that he harbored the specific intent to kill five officers.

WIRTH'S FIRST CLAIM IS PROCEDURALLY BARRED:

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[27]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[28]  Under California law a habeas petitioner must attach the documentary evidence or affidavits that support the claim to the petition.[29]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[30]  Under California law, contentions that could have been raised during direct appeal, but were not, generally

---

[27] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[28] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[29] *People v. Duvall*, 886 P.2d 1252, 1258 (1995); *In re Harris*, 855 P.2d 391, 397 n. 5 (1993); *In re Clark*, 855 P.2d 729, 750 n. 16 (1993).

[30] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

cannot be renewed in a petition for habeas corpus.[31]  In this case, Wirth failed to raise his

sufficiency of the evidence claim on direct appeal.  Indeed, the California Superior Court denied his

original petition for writ of habeas corpus on these grounds.[32]  Accordingly, Wirth's second claim is

procedurally barred by an adequate and independent state law ground.

WIRTH'S FIRST CLAIM IS WITHOUT MERIT:

In addition to being procedurally barred, Wirth's claim is without substantive merit.  As

stated by the Supreme Court in *Jackson*,[33] the constitutional standard for sufficiency of the evidence

is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[34]

This court must, therefore, determine whether the assumed decisions by the California courts on the

merits unreasonably applied *Jackson*.

Wirth misperceives the role of a federal court in a habeas proceeding challenging a state-

court conviction.  This Court is precluded from either re-weighing the evidence or assessing the

credibility of witnesses.  Where the question is one of credibility, the finding of the jury carries the

day.[35]  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if

accepted as credible by the jury, sufficient to sustain conviction.[36]  Furthermore, under the AEDPA,

---

[31]  *In re Terry,* 484 P.2d 1375, 1387 (Cal. 1971).

[32]  Lodged Doc. No. 8.

[33]  *Jackson v. Washington*, 443 U.S. 307 (1979).

[34]  *Id.* at 319 (emphasis in the original).

[35]  *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[36]  *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

a federal court may not grant a habeas petition unless it finds that the state court unreasonably applied the principles underlying the *Jackson* standard.[37]  It is through this doubly deferential lens that this Court undertakes its review of Wirth's sufficiency of the evidence claim.

At this point, brief discussion of the relevant California law regarding murder, attempted murder and related doctrines is instructive.  Under California law, "murder is the unlawful killing of a human being, or a fetus, with malice aforethought."[38]  "Murder does not require the intent to kill. Implied malice–a conscious disregard for life–suffices."[39]

"Under the classic formulation of California's common law doctrine of transferred intent, a defendant who shoots with the intent to kill a certain person and hits a bystander instead is subject to the same criminal liability that would have been imposed had the fatal blow reached the person for whom intended.  In such a factual setting, the defendant is deemed as culpable as if he had accomplished what he set out to do."[40]

Under California law, the crime of attempted murder "requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing."[41]  "The

---

[37]  *See Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (en banc) (recognizing that "unreasonable application" standard applies to insufficient evidence claim); *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997) ("Federal review of these claims therefore now turns on whether the state court provided fair process and engaged in reasoned, good-faith decision making when applying *Jackson's* 'no rational trier of fact' test"), *vacated on other grounds*, 522 U.S. 801 (1977).

[38]  Cal. Penal Code § 187(a).

[39]  *People v. Smith*, 124 P.3d 730, 734 (Cal. 2005).

[40]  *People v. Bland*, 48 P.3d 1107, 1112 (Cal. 2002) (internal citations omitted).

[41]  *People v. Stone*, 205 P.3d 272, 275 (Cal. 2009) (citing *People v. Seel*, 34 Cal. 4th 535, 544 (Cal. 2004)).

mental state required for attempted murder has long differed from that required for murder itself." "[A]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." "The mental state required for attempted murder is further distinguished from the mental state required for murder in that the doctrine of "transferred intent" applies to murder but not attempted murder."[42]

While the doctrine of transferred intent does not apply to attempted murder, multiple attempted murder convictions may be sustained on a "kill zone," or "concurrent intent," theory when the evidence shows the defendant used lethal force of a type and extent calculated to kill everyone in an area . . . ."[43]  A concurrent intent theory applies when a defendant targets a primary victim but uses a kind of lethal force intended to kill everyone in a particular area (the "kill zone"), including the defendant's primary target.[44]  A concurrent intent theory also applies when a defendant uses a kind of lethal force intended to kill everyone in a particular area, but nevertheless has no specific target in mind.[45]

In Wirth's case, the jury heard evidence that Wirth filled a hallway knee deep with clothing and that this was where he intended to start the fire.  The jury also heard that Wirth was aware that the officers had showed up on the scene before they entered his home.  In fact, when one of the deputies knocked on Wirth's door and rang the doorbell, Wirth opened the mini-blinds next to the door and yelled: "What the fuck do you want?" to the deputy.  When the deputies entered Wirth's

---

[42] *Smith*, 124 P.3d at 734 (Cal. 2005).

[43] *Bland,* 48 P.3d at 1119.

[44] *See id*.

[45] *See Stone*, 205 P.3d at 278-79 (Cal. 2009).

house they kicked in two different doors.  The police dog that accompanied the deputies was

barking, and all of the officers were calling Wirth's name and yelling "Sheriff's Department!"  The

deputies testified that they heard no sounds other than their voices and the barking dog.  The

deputies noticed gas cans in the family room and debris in the hallway.  As the deputies entered the

hallway, a ball of flame came out of the bedroom and into the hallway.

Under these facts, the jury convicted Wirth of five counts of attempted murder.  On direct

appeal the Court of Appeal for California held that Wirth "obviously intended to kill anyone who

entered the hallway."[46]  Clearly, both the jury that convicted Wirth and the Court of Appeal inferred

that Wirth intended to turn the hallway into a "kill zone," and that Wirth intended to kill anyone

who entered it.[47]  It does not matter whether Wirth created the "kill zone" with the intent to target a

single officer or no officer in particular.[48]  Given the evidence in the record supporting this

conclusion and the deference this Court must show under both *Jackson* and the ADEPA, this Court

cannot say the assumed decisions by the California courts, on the merits, unreasonably applied

*Jackson*.  Wirth is not entitled to relief on his first ground.

GROUND II:

In his second ground for relief, Wirth alleges that the trial court violated his right of Due

Process and right to a Fair Jury Trial.  Specifically, Wirth alleges that the trial court administered

---

[46] Lodged Doc. No. 3, p.8.

[47]  Wirth appears to argue that he could only properly be convicted of one count of attempted murder because he was only aware that one officer was present on the scene.  As noted above, the "concurrent intent" theory does not require a defendant to know the identities of all the victims in a "kill zone."  Indeed, the "concurrent intent" theory does not require a defendant to know *any* of the identities of the victims in a "kill zone."

[48]  *See Smith*, 124 P.3d at 739-40; *see also Stone*, 205 P.3d at 278-79.

defective jury instructions which had the effect of removing the issue of specific intent from the jury's consideration and relieving the prosecution of its burden to prove all elements of the offense beyond a reasonable doubt.[49]  Wirth's counsel then appears to make three "sub-arguments" in support of the second ground for relief: 1) California Jury Instruction–Criminal ("CALJIC") 3.31, 8.66 and other instructions given by use of the phrase "a specific intent to kill another human being," communicated that an attempt to kill one officer rendered Wirth guilty of the attempted murder of the other officers and suggested conviction on the basis of an impermissible "transferred intent" theory;  2) by telling the jury that it would eliminate the phrase "malice aforethought" and then failing to give adequate instructions concerning the specific intent, the court effectively relieved the prosecution of its burden of proving specific intent beyond a reasonable doubt; and 3) the trial court had a *sua sponte* duty to instruct on all general principles of law relevant to the issues raised by the evidence.[50]

On his direct appeal from conviction, the only issue Wirth raised was "the failure to instruct *sua sponte* that [Wirth] must have actually known of all the victims in a "particular zone of risk" permitted the jury to convict him under a theory of "transferred intent" or "implied malice."[51]  Wirth did not raise any other issues on direct appeal.  In his original petition for habeas corpus, filed in the Sacramento Superior Court, Wirth raised the same two substantive grounds for relief that he raises before this Court.  In its denial of Wirth's petition, the Sacramento Superior Court noted that under California law, "habeas cannot be used as a substitute for appeal," and that because Wirth did not

---

[49]  Petitioner's First Amended Petition for Writ of Habeas Corpus, p. 5.

[50]  Petitioner's First Amended Petition for Writ of Habeas Corpus, p. 11.

[51]  Lodged Doc. No. 3, p. 5.

raise his grounds for relief on direct appeal, he could not raise them for the first time in his habeas petition.[52]  Normally, this would serve as an "adequate and independent state ground" which would be sufficient to uphold the state court judgment and foreclose this Court from hearing Wirth's second ground.  However, Respondent has not asserted adequate and independent state law grounds as an affirmative defense to Wirth's first ground.  Accordingly, it is deemed waived.[53]

Because Wirth's second ground was not raised on direct appeal to the California Court of Appeal and was denied as procedurally barred by the Sacramento Superior Court, there is no reasoned state court decision addressing it.  As noted above, when there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the assumed state court decision was objectively unreasonable.[54]

In his first "sub-argument" Wirth alleges that the court's use of the phrase "a specific intent to kill another human being," communicated that an attempt to kill only one officer rendered Wirth guilty of the attempted murder of the other officers and suggested conviction on the basis of an impermissible "transferred intent" theory.

Aside from making this bare allegation, Wirth's counsel does not cite any law or facts in support of this proposition.  Wirth carries the burden of proving by a preponderance of the evidence

---

[52]  Lodged Doc. No. 8, p.1.

[53] *See Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003) ("Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.").

[54] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

that he is entitled to habeas relief.[55]  The petition must specify all the grounds for relief available to the petitioner and the facts supporting each ground.[56]  If it plainly appears on the face of the petition that petitioner is not entitled to relief, a district court must dismiss the petition.[57]

After reviewing the record, this Court finds the first contention to be without substantive merit.  Wirth was charged with five counts of attempted murder of a peace officer.  Accordingly, the trial court was obligated to read the same instruction with respect to each officer who Wirth was accused of attempting to murder.  When it read the instructions to the jury, the trial court explicitly noted that the jury would need to rule on the attempted murder charge with respect to each individual officer.[58]  Indeed, the trial court named each officer.[59]  The trial court then gave CALJIC 8.66, which defines attempted murder.  Specifically, the trial court noted that Wirth "[was] accused *in Counts 1 through 5* of having committed the crime of attempted murder."[60]  Thus, it was clear to the jury that the instructions defining attempt and murder applied to each of counts 1-5.

Even if CALJIC's 3.31 and 8.66 were somehow presented in an ambiguous manner, Wirth is not entitled to relief.  "[W]hen considering an allegedly erroneous jury instruction in a habeas proceeding, [a] . . . court first considers whether the error in the challenged instruction, if any,

---

[55]  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations unsupported by specific facts are insufficient to warrant habeas relief).

[56]  Rules—Section 2254 Cases, Rule 2(c).

[57]  Rules—Section 2254 Cases, Rule 4.

[58]  Reporter's Transcript on Appeal, pp. 1797-1798.

[59]  Reporter's Transcript on Appeal, pp. 1797-1798.

[60]  Reporter's Transcript on Appeal, p. 1801 (emphasis added).

amounted to 'constitutional error.'"[61]  When inquiring whether an ambiguous jury instruction rises

to the level of constitutional error, we ask whether, "considered in the context of the instructions as

a whole and the trial record[,] . . . 'there is a reasonable likelihood that the jury has applied the

challenged instruction in a way' that violates the Constitution."[62]  Wirth does not meet this burden.

His allegation that CALJIC 3.31 and 8.66 urged the jury to convict without finding specific intent is

not supported by any facts that there was a reasonable likelihood that the jury applied the

challenged instruction in a manner which violated the Constitution.  Accordingly, denial of this

contention by an assumed state court decision is not objectively unreasonable.[63]  Wirth's first "sub-

argument" is without merit.

      In his second "sub-argument," Wirth claims that by telling the jury that it would eliminate

the phrase "malice aforethought," because the element is satisfied by a specific intent to kill another

human being, and then failing to give adequate instructions concerning the specific intent, the court

effectively relieved the prosecution of its burden of proving specific intent beyond a reasonable

doubt.[64]  Wirth insists that this error was compounded when the court stated, "as I explained on

counts 1-5, there is a specific intent to kill."[65]  In his Traverse, Wirth goes on to say that the trial

court's statement "did nothing to properly burden the jury with the task of deciding whether the

---

[61]  *Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003) (*citing Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001)).

[62]  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Boyde v. California*, 494 U.S. 370 (1990)).

[63]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[64]  Petitioner's First Amended Petition for Writ of Habeas Corpus, p. 11.

[65]  Petitioner's First Amended Petition for Writ of Habeas Corpus, p. 11.

17

prosecution had proven beyond a reasonable doubt a concurrent intent to kill each of the officers. Instead, the jury was left with the impression that all that was needed was 'a specific intent to kill another human being.'"[66]  Although the precise nature of Wirth's argument is not entirely clear, it appears to this Court that Wirth is arguing that the trial court's statements regarding malice aforethought somehow relieved the prosecution of its burden of proving that Wirth had the specific intent to murder each officer.

To the extent that the trial court's statements regarding what it "would do" if it had more time created an ambiguity in the jury instructions, this Court must determine whether the challenged instruction amounted to a constitutional error.[67]  As stated above, an ambiguous jury instruction rises to the level of constitutional error when, "considered in the context of the instructions as a whole and the trial record[,] . . . 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'"[68]  If so, this Court then "considers whether the error was harmless."[69]

Wirth does not allege any facts specifically showing that there is a reasonable likelihood that the jury applied the jury instruction regarding specific intent in an unconstitutional manner.  After conducting an independent review of the jury instructions and the trial record as a whole, this Court

---

[66] Petitioner's Reply/Traverse and Points and Authorities, p. 7.

[67]  *Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003) (*citing Morris v. Woodford*, 273 F.3d 826, 833 (9th Cir. 2001)).

[68] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Boyde v. California*, 494 U.S. 370 (1990)).

[69] *Morris v. Woodford* at 833 (*citing Calderon v. Coleman*, 525 U.S. 141, 146 (1998)) (per curiam).

does not find Wirth's argument to be persuasive.  Immediately before reading CALJIC No. 8.66, the trial court read CALJIC No. 2.90 which explained the presumption of innocence, reasonable doubt, and burden of proof.[70]  The trial court then went on to explain that each count of attempted, premeditated murder has the same requirements for *each alleged victim*.[71]  Taken as a whole, there is no evidence that any ambiguity urged the jurors to find Wirth guilty of attempted murder without finding the same elements with respect to each victim.

Even assuming a constitutional error, before this Court may grant relief, it must find that any constitutional error was not harmless.  Under *Brecht*, the Court must find that the error "had substantial and injurious effect or influence in determining the jury's verdict."[72]  In reviewing the record, there is sufficient evidence to show that any error that may have occurred regarding the specific intent instruction was harmless.  Specifically, even if the trial court created a minor ambiguity when it discussed the term "malice aforethought," it also provided the jurors with written instructions[73] which contained both the "malice aforethought" and "specific intent" instructions.[74] The instructions clarified that, with respect to the five counts of attempted murder, malice aforethought is, "namely, a specific intent to kill another human being."[75]  Furthermore, the written

---

[70]  Reporter's Transcript on Appeal, pp. 1800-1801.

[71]  Reporter's Transcript on Appeal, pp. 1797-1798 (emphasis added).

[72] 507 U.S. at 622 (1993); *see also Fry*, 551 U.S. at 121 (2007) (holding that the *Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

[73]  *See* Lodged Doc. No. 12, Vol. 1, p. 259; *see also* Reporter's Transcript on Appeal, p. 1784.

[74]  Lodged Doc. No. 12, Vol. 1, p. 227.

[75]  Lodged Doc. No. 12, Vol. 1, p. 227.

instructions contained an admonition that the jurors were to be governed "only by the instruction in its final wording."[76]  Thus, it was clear to the jurors that they were to follow the written instructions presented to them in the event the court's reading of the instructions created an ambiguity.  Finally, in deliberating on the issue of specific intent, the jury even asked the judge for clarification "on what constitutes 'specific intent' in relation to attempted murder charges."[77]  As the California Court of Appeal noted "the trial court apparently responded that specific intent refers to the purpose, aim or goal of the person in committing the act."[78]  This would have effectively clarified any ambiguity that the jury may have struggled with.  Wirth does not challenge this finding or present any evidence to the contrary.  Accordingly, any error caused by an ambiguous instruction was harmless and denial of this contention by an assumed state court decision is not objectively unreasonable.[79]  Wirth's second "sub-argument" is without merit.

In his third and final "sub-argument," Wirth contends that the trial court had a *sua sponte* duty to instruct on all general principles of law relevant to the issues raised by the evidence and that it failed to fulfill this duty because it did not give "adequate instructions concerning the requisite intent to kill in attempted murder cases."[80]  As noted above, the trial court provided the jury with instructions concerning the burden of proof, malice aforethought and specific intent to kill.  Additionally, the trial court clarified the term specific intent for the jurors when they struggled with

---

[76]  Lodged Doc. No. 12, Vol. 1, p. 259.

[77]  Lodged Doc. No. 12, Vol. 1, p. 273.

[78]  Lodged Doc. No. 3, pg. 9.

[79]  *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[80]  Petitioner's First Amended Petition for Writ of Habeas Corpus, p. 11.

20

its meaning during their deliberations.  Furthermore, and perhaps most dispositive, is the fact that

the "concurrent intent [i.e., 'kill zone'] theory is not a legal doctrine requiring special jury

instructions . . . .  Rather, it is simply a reasonable inference the jury may draw in a given case: a

primary intent to kill a specific target does not rule out a concurrent intent to kill others."[81]  After

reviewing the record and transcripts, this Court cannot say that the California Court of Appeal's

conclusion that the "jury was instructed with the full panoply of specific intent instructions"[82] was

objectively unreasonable.[83]

       To the extent that Wirth is arguing that "the failure to instruct *sua sponte* that [Wirth] must

have actually known of all the victims in a "particular zone of risk" permitted the jury to convict

him under a theory of "transferred intent" or "implied malice,"[84] he is renewing the argument that he

made on direct appeal from his trial.  Issues of the proper application of state law are beyond the

purview of this Court in a federal habeas proceeding.  "[A] state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court sitting

in habeas corpus."[85]  A petitioner may not transform a state-law issue into a federal one by simply

---

[81] *Bland*, 48 P.3d at 1119, fn. 6.

[82] Lodged Doc. No. 3, pg. 7.

[83] *Reynoso*, 462 F.3d at 1109; *Pham*, 400 F.3d at 742.

[84] Lodged Doc. No. 3, p. 5.  It is not completely clear that Wirth is raising this issue in his petition to this court.  However, in the interests of being thorough, this Court will address the issue as if Wirth had raised it.

[85] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

asserting a violation of due process.[86]  Nor may a federal court issue a habeas writ based upon a

perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due

process under the Fourteenth Amendment.[87]  As noted above, the concurrent intent theory is not a

legal doctrine requiring special jury instructions.[88]  Furthermore, under the doctrine of concurrent

intent, a defendant need not know the identities of any of the potential victims who may enter a "kill

zone" he or she has created.  Thus, Wirth's argument essentially is:  allowing the jury to convict

Wirth under a theory of concurrent intent was the equivalent of allowing the jury to convict him

under a theory of "transferred intent" or "implied malice."  This Court cannot say that the California

Court of Appeal's conclusion that the trial court did not have a *sua sponte* duty to give a jury

instruction that had not been written amounted to a denial of due process under the Fourteenth

Amendment.[89]

      In support of his third "sub-argument," Wirth *also* posits that "the Court of Appeal never

discussed [his] argument that CALJIC 3.31 and 8.66 as given have the unintended but ineluctable

effect of telling the jury that an attempt to kill one person renders a defendant guilty of the

---

[86]  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[87]  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[88]  *Bland*, 48 P.3d at 1119, fn. 6.  California Jury Instructions– Criminal 600 and 8.66.1 deal specifically with the "concurrent intent" theory.  However, these instructions were written after Wirth was convicted.  The Court of Appeal held that the trial court did not have a duty to give, *sua sponte*, jury instructions that had yet been written.  The California Supreme Court essentially affirmed this finding in *Bland*, when it held that the "concurrent intent [i.e., 'kill zone'] theory is not a legal doctrine requiring special jury instructions . . . .  Rather, it is simply a reasonable inference the jury may draw in a given case: a primary intent to kill a specific target does not rule out a concurrent intent to kill others."

[89]  *See Pulley*, 465 U.S. at 41.

attempted murder of everyone put at risk by that attempt."[90]   Wirth asserts that his case is materially indistinguishable from *Sandstrom v. Montana,*[91] a Supreme Court case holding that the jury instruction, "the law presumes that a person intends the ordinary consequences of his voluntary acts," violates the Fourteenth Amendment.   Wirth's argument is not persuasive.

Contrary to his claim, the Court of Appeal did address Wirth's argument on direct appeal. Specifically, it held that "the jury was not instructed with a 'transferred intent' standard, which could possibly lead to a lesser mens rea for attempted murder than specific intent to kill another human being."[92]  The court also held that when an individual creates a particular zone of risk, the fact that he or she is not aware of the identity of each victim or may not be able to see all of his or her victims does "not somehow negate [an] express malice or intent to kill as to those victims who were present and in harms way . . . ."[93]  Finally, the court noted that "here, [Wirth] obviously intended to kill anyone who entered the hallway."[94]  Thus, the Court of Appeal did address Wirth's argument.  Accordingly, this Court is bound by the Court of Appeal's written decision, unless Wirth can show that the Court of Appeal committed an error "sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment."[95]

---

[90]  Petitioner's Reply/Traverse and Points and Authorities, p. 11(internal quotations omitted).

[91]  442 U.S. 510 (1979).

[92]  Lodged Doc. No. 3, p. 7.

[93]  Lodged Doc. No. 3, pp. 7-8.

[94]  Lodged Doc. No. 3, p. 8.

[95]  *See Pulley*, 465 U.S. at 41 (1984).

Additionally, *Sandstrom* is inapposite to Wirth's case.  In *Sandstrom*, the petitioner was charged with "purposely or knowingly" causing a victim's death.  Before deliberations the trial court issued the instruction: "the law presumes that a person intends the ordinary consequences of his voluntary acts."[96]  On appeal, the Supreme Court held that the jury could have interpreted the instruction as constituting either a burden shifting presumption or a conclusive presumption, which would have deprived Wirth of his right to the due process of law.[97]  *Sandstrom* is distinguishable on the facts.  The holding in *Sandstrom* was limited to a single instruction: "the law presumes that a person intends the ordinary consequences of his voluntary acts."[98]  This instruction was not given to Wirth's jury.  Furthermore, none of the instructions given to Wirth's jury established any presumptions with respect to Wirth's state of mind.  Rather, the instructions explicitly stated that each count of attempted, premeditated murder had the same requirements for *each alleged victim.*[99]  Thus, Wirth is unable to show that the jury instructions, as given, were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[100]  Wirth's third "sub-argument" is without merit.  Wirth is not entitled to relief on his second ground.

---

[96]  *Sandstrom*, 442 U.S. at 512.

[97]  *Id*. at 524.

[98]  *Id*. at 512 ("The question presented is whether, in a case in which intent is an element of the crime charged, the jury instruction, 'the law presumes that a person intends the ordinary consequences of his voluntary acts,' violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt.").

[99]  Reporter's Transcript on Appeal, pp. 1797-1798 (emphasis added).

[100]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75.

V.     CONCLUSION and ORDER

Wirth is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[101]

The Clerk of the Court to enter judgment accordingly.

Dated: December 16, 2009.


_____/s/ James K. Singleton, Jr._____
**JAMES K. SINGLETON, JR.**
United States District Judge

_____

[101]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.